## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA *Ex rel.* Crystal McKinsey, <br><br> Relator, <br><br> v. <br><br> LAB ELITE, LLC; LABCO ELITE, LLC; HEALTHCARE DEVELOPMENT PARTNERS, LLC; HDP LABS, LLC; LAB DASH, LLC; GRAND RIVER INVESTMENTS, LLC; BOB TRANSPORTATION AND TAXI, INC.; NIKOLA NOZINIC; ZISHAN ALVI; TODD BRYANT; ROXANNE SCAVONE; BABAR NASIM; and MOIN BABAR, <br><br> Defendants. | Civ. No. 21-20528 <br><br><br> **Opinion** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Before the Court is Defendants Babar Nasim, Moin Babar, and Bob Transportation and Taxi, Inc.'s ("Bob Transportation,") Motion to Dismiss Plaintiff's First Amended *Qui Tam* Complaint, ECF No. 36 (the "Motion"), which the Court decides without oral argument. Fed. R. Civ. P. 78(b). For the following reasons, the Motion is **GRANTED**.

### I.     BACKGROUND

Relator Crystal McKinsey ("Relator") filed her first amended *qui tam* complaint (the "AC") on behalf of the United States on January 8, 2026, alleging violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"). ECF No. 33. Broadly speaking, the AC alleges that from November 2020 to December 2022, Defendants[1] conspired to (1) submit claims to the Government seeking reimbursement for medical services that were provided in exchange for illegal kickbacks; (2) submit claims for medical services that were billed for but never actually rendered; and (3) submit claims for medical services provided to patients who were ineligible to participate in a federal program offering reimbursement for the services. AC ¶¶ 1-6.

#### a.   The Uninsured Program

The Court accepts the following facts as true for the purpose of deciding the Motion. The AC alleges that the Defendants conspired to submit false claims to the Health Resources and Services Administration ("HRSA") of the Department of Health and Human Services during the

---

[1] This Opinion uses the shorthand "Defendants" to refer collectively to each individual and entity named in the caption. "Moving Defendants" refers solely to Nasim, Babar, and Bob Transportation.

Covid-19 pandemic. In 2020, Congress passed legislation establishing the "Covid-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment, and Vaccine Administration for the Uninsured Program" (the "Uninsured Program" or the "Program"). *Id.* ¶ 35. The Uninsured Program's purpose was to reimburse health care providers for services, such as covid testing, rendered to uninsured patients. *Id.* ¶ 36. As its name implies, insured patients were ineligible for reimbursement under the Uninsured Program. *Id.*

### b. The Alleged Scheme

The alleged scheme operated as follows. Defendants would approach employers and convince them to partner with Lab Elite, LLC ("Lab Elite") to provide covid testing to their employees. *Id.* ¶ 46. Defendants represented to prospective clients that testing would come at "zero cost to the employer, the employee, and the employee's insurance," and the expenses would be covered by federal funding. *Id.* ¶¶ 46-47. Defendants did not indicate that funding would be provided by the Uninsured Program. *Id.* ¶ 47. This is because the employees being tested were insured by their employers, and consequently did not qualify for reimbursement under the Uninsured Program—a fact which the AC alleges Defendants knew and sought to hide from their clients. *Id.* ¶¶ 7-8. To account for the fact that Defendants were billing for tests collected from insured employees and submitted claims pursuant to a program that only provided reimbursements for uninsured individuals, Defendants encouraged employees to mark "no insurance" on the Program's order forms. *Id.* ¶ 51 (Defendant Zishan Alvi stating to Defendant Roxanne Scavone, "YOU CANNOT TELL PATIENTS NOT [sic] ENTER INSURANCE IN WRITING") (emphasis in original).

Lab Elite was the laboratory that performed tests and submitted claims to the Uninsured Program. *Id.* ¶ 68. The claims were accompanied by several mandatory attestations. *Id.* ¶¶ 7, 42. These attestations were designed to verify compliance with the Uninsured Program; namely, to certify that the providers confirmed the patients were uninsured, and that all claims were submitted in compliance with the Program's terms and conditions. *Id.* ¶¶ 7, 36-37. Notably, the AC also alleges that Defendants later decided the scheme could operate more efficiently if they did not actually submit all the samples for covid testing. After this realization, Lab Elite would collect the specimens from patients, identify ones deemed unlikely to test positive for covid, and then simply discard the test rather than submit the specimen for evaluation. *Id.* ¶ 54. Defendants allegedly billed the Program for these tests, despite their never actually being processed. *Id.* ¶ 58. Just as Defendants obfuscated the source of the funding for their alleged scheme, the AC states that Defendants also sought to conceal the fact that certain tests were not actually being processed. *Id.* ¶¶ 59-60.

Lab Elite would then submit these claims to the Uninsured Program through the HRSA's online portal. *Id.* ¶ 36. All told, it submitted claims seeking $206,041,945 in reimbursement and received $83,578,387.89. *Id.* ¶¶ 13, 44. The funds would then be distributed in the form of kickbacks among Defendants—including Moving Defendants—in exchange for their referring clients to Lab Elite,. *Id.* ¶¶ 63-64, 70, 74, 76. Defendant Todd Bryant sought to recruit Relator to join the alleged scheme and "repeatedly emphasized his willingness to pay kickbacks" in exchange for referring employers to Lab Elite, citing a check worth $390,805 sent to Bob Transportation as evidence of the potential profits to be gained from Relator's participation. *Id.* ¶¶ 14, 62. These kickbacks, Relator alleges, violate the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (the "AKS"), and form the basis for her claims under the FCA. *Id.* ¶¶ 39-42, 67.

## II.    LEGAL STANDARD[2]

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  Construing all well-pleaded allegations in the complaint as true and in the light most favorable to the non-moving party, courts will grant a motion to dismiss only if it lacks "sufficient factual matter to show that the claim is facially plausible." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citation modified).  Courts need not credit bald assertions or legal conclusions that purport to act as factual allegations.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997).  A complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).

## III.    DISCUSSION

The False Claims Act was enacted to cover "all types of fraud . . . that might result in financial loss to the Government." *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 486 (3d Cir. 2017) (citation modified).  To state a claim under Section 3729(a)(1) of the FCA, a plaintiff must allege: "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *United States ex rel. Schmidt v. Zimmer*, 386 F.3d 235, 242 (3d Cir. 2004).

Under the first element, the Third Circuit has held that the FCA imposes liability on parties other than the "actual presenters." *Schmidt*, 386 F.3d at 243-44.  If a non-presenting party's conduct is a "substantial factor" in causing another to file a false claim, and that filing was a "normal consequence" of the scheme, then the non-presenting party may be found to have caused the filing.  *Id.* at 244-45; *United States v. Albinson*, No. 09-cv-1791, 2010 WL 3258266, at *11 (D.N.J. Aug. 16, 2010) (noting that a defendant may be implicated under Section 3729(a)(1) "even if she was not the actual presenter or the one making the statement").

Next, claims submitted in violation of the AKS are deemed false or fraudulent for the purposes of the FCA's second element.  *United States ex rel. Travis v. Gilead Scis., Inc.*, 596 F. Supp. 3d 522, 539 (E.D. Pa. 2022) (citing 42 U.S.C. § 1320a-7b(g)).  Thus, the Court's initial task is to determine whether the AC sufficiently alleges an AKS violation.  *See id.* at 538; *see also United States ex rel. Kosenske v. Carlisle HMA, Inc.*, No. 05-cv-2184, 2010 WL 1390661, at *5 (D.N.J. Mar. 31, 2010).  To establish a prima facie case under the AKS, Relator must allege that the defendants "knowingly and willingly solicited or received renumeration in return for, or to induce, referrals to a person or entity for services covered by [any] federally funded healthcare program." *United States ex rel. Bartlett v. Ashcroft*, 39 F. Supp. 3d 656, 676 (W.D. Pa. 2014) (citation modified).  The Court will assume without deciding that the AC sufficiently pleads the first two elements of an FCA claim.

The third element of the FCA requires knowledge.  Under the FCA's definition of "knowingly," whether defendant knew of the claim's falsity or fraudulence can be demonstrated by actual knowledge, deliberate indifference, or reckless disregard for the truth.  *See* 31 U.S.C. § 3729(b)(1).  The Act does not require "proof of specific intent to defraud." 31 U.S.C.

---

[2] Moving Defendants invoke Rules 9(b), 12(b)(2), 12(b)(4), 12(b)(5), and (12)(b)(6) as grounds for dismissal.  Defs.' Br. 1-6, 11, ECF No. 36-1 Because the Court decides the Motion solely under Rule 12(b)(6), it does not recite the remaining legal standards under which Moving Defendants seek relief.

3

§ 3729(b)(1)(B).  At the pleading stage, all that is required is "a showing that leads to a strong inference that Defendant knew of the [scheme]." *United States v. Loving Care Agency, Inc.*, 226 F. Supp. 3d 357, 366 (D.N.J. 2016).  Still, a complaint cannot rely on "collective knowledge" as a basis for proving this element.  *United States v. Gilead Scis., Inc.*, No. 17-cv-1183, 2025 WL 2627686, at *13 (E.D. Pa. Sept. 11, 2025), *appeal filed sub nom.*, *Travis v. Gilead Scis., Inc.*, 25-2876 (3d Cir. 2026).  When a party alleges an FCA claim predicated on an underlying AKS violation, the defendant's knowingly receiving kickbacks does not necessarily establish the FCA's knowledge requirement.  *Hericks v. Lincare*, No. 07-cv-387, 2014 WL 1225660, at *10 (D.N.J. Mar. 25, 2014); *cf. United States ex rel. Singh v. Bradford*, 752 F. Supp. 2d 602, 642 (denying summary judgment on the FCA's scienter element despite evidence that defendants knew their conduct violated the AKS).

Even assuming that the AC sufficiently pleads the first two elements of an FCA claim, Relator's claim against Moving Defendants must be dismissed because she fails to adequately plead that Moving Defendants acted knowingly for the purposes of the FCA.  This is because the AC, lacking any specific and non-conclusory information regarding Moving Defendants' roles in the alleged scheme, does not give rise to a strong inference that any of Defendants Nasim, Babar, or Bob Transportation had actual knowledge of the scheme, were deliberately indifferent to the scheme's operation, or displayed reckless disregard towards the scheme's existence.  *Loving Care Agency*, 226 F. Supp. 3d at 366.

For example, the AC states that Defendants Nasim and Babar, as owners of Bob Transportation, "caused [the company] to accept illegal kickbacks in exchange for referring Covid-19 laboratory tests to Lab Elite, receiving approximately $390,805.00 a week," despite the referred services being ineligible for reimbursement from the Uninsured Program.  AC ¶ 76.  Absent from the AC, however, is any allegation that Moving Defendants *knew* the services were ineligible for reimbursement pursuant to the Program.  While the AC alleges that Moving Defendants were receiving illegal kickbacks in exchange for these referrals, knowing receipt of kickbacks alone does not satisfy the Court's inquiry.  *Bradford*, 752 F. Supp. 2d at 642.

Relator advances several arguments why her claims against Moving Defendants satisfy Rule 12(b)(6).  None succeed.  First, Relator contends that the AC's allegations support a reasonable inference that "all defendants acted knowingly."  Rel.'s Opp'n 2.  Relator's argument in support of this point fails because it omits any reference to Moving Defendants.  *See id.* 2-4 (discussing Defendants Alvi, Scavone, and Bryant's roles in the alleged scheme).  Relator cannot rely on "collective knowledge" to satisfy this element vis-à-vis Moving Defendants.[3]  *Gilead Scis., Inc.*, 2025 WL 2627686, at *13.

Second, Relator argues that the AC supports the reasonable inference that Moving Defendants knew the referrals sent to Lab Elite were being submitted to the Uninsured Program for reimbursement.  Rel.'s Opp'n 7.  Because this argument also relies on the conduct of other Defendants, and does not mention Moving Defendants' conduct, it fails for the same reasons described above.  *Gilead Scis., Inc.*, 2025 2627686, at *13.

---

[3]  The Court notes that, to the extent Relator attempts to rely on group pleading to impute knowledge to Moving Defendants, this would likely run afoul of Rules 8 and 9(b).  *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 386 (D.N.J. 2019).

4

Finally, Relator argues that the AC sufficiently alleges that Moving Defendants must have acted knowingly under the FCA because the AC adequately alleges an AKS violation. Rel.'s Opp'n 5 (citing *Ashcroft*, 39 F. Supp. 3d at 665). Relator is correct that, when faced with claims such as these, courts must first consider whether a complaint adequately alleges an underlying AKS violation. *Kosenske*, 2010 WL 1390661, at *5. Nevertheless, this argument misses the mark. Establishing an AKS violation satisfies only the second element of an FCA claim: falsity or fraudulence. *See Bartlett*, 39 F. Supp. 3d at 665 (recognizing that establishing an AKS violation establishes falsity and *then* courts "must determine whether [d]efendants knowingly caused the submission of a false claim to the United States") (citation modified). Thus, while the AC may sufficiently allege that Moving Defendants accepted kickbacks, that does not necessarily allege that Moving Defendants knew the claims were false. The AC's claims against Moving Defendants are dismissed.

## IV.    CONCLUSION

For the reasons stated herein, the Motion is **GRANTED**. An appropriate order follows.[4]

Date: April 22 2026

_____
WILLIAM J. MARTINI, U.S.D.J.

---

[4] In the alternative, Moving Defendants ask for this matter to be transferred to the Northern District of Illinois. *Id.* at 7. The Court does not express any opinion on the Motion's request for a transfer.